IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–01135–PAB–KMT

GEORGE FRANCIS OSEI,

      Plaintiff,

v.

JAMES BROOKS,
DAVID NGUYEN,
T. TOBIN, and
THE CITY AND COUNTY OF DENVER,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Damages" (Doc. No. 30 [Mot.], filed July 14, 2011). Plaintiff filed his Response on August 8, 2011 (Doc. No. 42 [Resp.]), and Defendants filed their Reply on September 2, 2011 (Doc. No. 48 [Reply]). The motion is ripe for recommendation and ruling.

## STATEMENT OF THE CASE

      Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, alleging Defendants violated his Fourth and Fourteenth constitutional rights. Plaintiff asserts that prior to April 5, 2009, he had been placed on probation in El Paso County, Colorado. (Second Am. Compl., ¶ 13.) Plaintiff was given special judicial permission to return to Ghana to sell business interests, and his trip took one and one-half months longer than expected. (*Id.*) Because Plaintiff had violated a court

order, his probation officer advised him to turn himself in upon returning to the United States.

(*Id.*)  At the time Plaintiff returned to the United States for Ghana, he had four outstanding

warrants for his arrest, including 1) a 2/23/09 warrant for failing to appear in an assault case (*see*

Reply, Ex. B); 2) a 2/23/09 warrant for failing to appear in a domestic violence case (*see id.*, Ex.

C); 3) two 11/3/08 warrants for failing to appear in driving under suspension cases (*see id.*, Exs.

D and E.[1]

On April 5, 2009, Plaintiff flew into Denver International Airport (DIA), where

Defendants took custody of him, "put him into a temporary cell, and inhumanely abused him by

denying him drinking water, torturing him with excessively tight handcuffs, handcuffing him to a

metal bed in an unreasonable manner, and forcing his face into toilet water on the jail cell floor."

(*Id.* at 1–2, 4.)  Plaintiff asserts claims for deprivation of basic living necessities, procedural and

substantive due process/deprivation of property, unnecessary and excessive force, failure to

intervene, and a claim under *Monell v. Department of Social Services of the City of New York*,

436 U.S. 658 (1978).  (*See id.*)  Plaintiff seeks compensatory damages, punitive damages,

injunctive relief, and declaratory relief.  (*Id.* at 14.)  Defendants move to dismiss Plaintiff's

claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot.)

---

[1]The court may take judicial notice of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  These exhibits are relevant portions of the Integrated Colorado Online Network Docket, of which the Court may take judicial notice without converting Defendants' Motion to Dismiss into a motion for summary judgment.  *See, e.g, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Tal v. Hogan*, 453 1244, 1264 n.24 (10th Cir. 2006).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

### 1.    *Consideration of Surveillance Videotape Outside the Pleadings*

As a preliminary matter, in support of their Motion to Dismiss, Defendants have submitted a copy of a surveillance videotape from the DIA holding cell on the day Plaintiff was detained. (*See* Mot., Ex. A.) Defendants argue that "[b]ecause Plaintiff refers to the surveillance video in his Second Amended Complaint and it is central to his claims, the Court may consider the video in ruling on Defendants' Motion to Dismiss without converting it into a summary judgment motion." (*Id.* at 2 n.2 [citing *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961–62 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)].)

4

Generally, when ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), a court should not look beyond the contents of the complaint itself. *MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002). Fed. R. Civ. P. 12(d) requires that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, the court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). The mere fact that Defendants provided documents to the court does not require the court to rely on those documents. *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341–42 (10th Cir. 2000). Thus, the court "has discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment by accepting or rejecting the attached documents." *JP Morgan Trust Co. Nat. Ass'n v. Mid-America Pipeline Co.*, 413 F.Supp.2d 1244, 1256-57 (D. Kan.2006).

Nevertheless, when ruling on a rule 12(b)(6) motion to dismiss, the court may consider documents that are referred to in the complaint and that are central to the plaintiff's claims if the defendants submit an indisputably authentic copy to the court. *GFF Corp.*, 130 F.3d at 1384. In *GFF Corp.*, a breach of contract and fraud case, the plaintiff frequently referred to and quoted from a typewritten bid in the form of a letter, alleged that the letter alone satisfied the statute of frauds, attached the letter as an exhibit in response to the motion to dismiss, and referred to the letter throughout its response brief. *GFF Corp.*, 130 F.3d at 1383, 1385. Here, however, Plaintiff only generally mentions the videotape once in his Second Amended Complaint, noting

5

only that most of the Defendants' alleged "acts were captured on videotape." (Second Am. Compl. at 2.)

Moreover, this court previously determined that some discovery may be necessary if the court were to convert the motion to dismiss into a motion for summary judgment and consider the videotape. (*See* Doc No. 58 at 2.)  Thus, converting the motion to dismiss into a motion for summary judgment would be premature at this time. *See Tholen v. Ostler*, No. 2:07CV645DAK, 2008 WL 4446673, at *11 (D. Utah Sept. 26, 2008) (declining to convert a motion to dismiss into a motion for summary judgment on an issue that was "premature in light of outstanding discovery").  Further, this court previously stayed discovery pending ruling on this motion to dismiss. (Doc. No. 40.)

In light of the foregoing, this court declines to exercise its discretion and to consider the videotape submitted by Defendants in its Recommendation on the Motion to Dismiss.

## 2.      *Qualified Immunity*

Defendants argue they are entitled to qualified immunity on Plaintiff's First and Third Claims for Relief. (Mot. at 6–9, 11–15.)

Whether a defendant is entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry.  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established

> is whether it would be clear to a reasonable officer that his conduct was unlawful
> under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks
and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which
of the two prongs of the qualified immunity analysis should be addressed first in light of the
circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the
plaintiff can satisfy both prongs of the inquiry. *Id.*

### A.   *First Claim for Relief for Deprivation of Basic Living Necessities*

In Plaintiff's Second Amended Complaint, he alleges he was extremely dehydrated from
a long overseas flight and urgently required drinking water. (Second Am. Compl., ¶ 43.)
Plaintiff alleges he requested drinking water several times, that the defendant officers heard and
understood Plaintiff's requests, that they knew or should have known of Plaintiff's need for
drinking water and the likelihood that Plaintiff was dehydrated, and that the defendants ignored
Plaintiff's requests for water. (*Id.*, ¶¶ 44-49.) Plaintiff alleges the defendants were deliberately
indifferent to Plaintiff's basic human need for water and that they mocked him by holding his
face in toilet water on the floor of his cell and telling him that he could "drink *that* water." (*Id.*,
¶¶ 49–50 [emphasis in original].) Plaintiff alleges the defendants caused "dehydration, mental
distress, dignitary [sic] harm, and emotional harm." (*Id.*, ¶ 50.)

Under the Due Process Clause of the Fourteenth Amendment, the City was required to
provide to a pretrial detainee such as Plaintiff "humane conditions of confinement by
ensuring . . . the basic necessities of adequate food, clothing, shelter, and medical care and by

taking reasonable measures to guarantee [his] safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310

(10th Cir. 1998); *see also Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the

Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of

confinement, the Eighth Amendment standard provides the benchmark for such claims.")

(citation omitted).  In order to establish the defendants' liability for violating his right to humane

conditions of confinement, Plaintiff is required to establish that: (1) the officials "kn[ew] of and

disregard[ed] an excessive risk to [his] health and safety," *Farmer v. Brennan*, 511 U.S. 825, 837

(1994), and (2) the alleged deprivation was "sufficiently serious."  *See Wilson v. Seiter*, 501 U.S.

294, 298 (1991).  As to the second component, jail conditions may be "restrictive and even

harsh" without violating constitutional rights.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[O]nly those deprivations denying the minimal civilized measure of life's necessities . . . are

sufficiently grave to form the basis of an Eighth Amendment violation."  *Seiter*, 501 U.S. at 298

(internal quotation marks omitted).  Mere discomfort or temporary adverse conditions which

pose no risk to health and safety do not implicate the Eighth Amendment.  *Hudson v. McMillian*,

503 U.S. 1, 9 (1992).

    "While no single factor controls the outcome of these cases, the length of exposure to the

conditions is often of *prime importance*."  *DeSpain v. Uphoff*, 264 F .3d 965, 974 (10th Cir.

2001) (emphasis added).  In this regard, "the severity and duration of deprivations are inversely

proportional, so that minor deprivations suffered for short periods would not rise to an Eighth

Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and

sanitation' may meet the standard despite a shorter duration."  *Id.* (citations omitted).  In his

Second Amended Complaint, Plaintiff fails to allege the length of time he was deprived of drinking water. (*See* Second Am. Compl.) Thus, the court is unable to determine whether the defendants' alleged conduct in denying Plaintiff water satisfies the objective component of his inhumane conditions claim, and the claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Therefore, the court need not reach the question of whether the defendants are entitled to qualified immunity on Plaintiff's inhumane conditions claim.

**B.    Third Claim for Relief for Unnecessary and Excessive Force**

Plaintiff alleges the defendants applied unnecessary, unreasonable, and excessive force by applying excessively tight handcuffs to Plaintiff's wrists and ankles; by refusing to loosen the handcuffs; by handcuffing him to a metal bed; by aggressively manhandling Plaintiff; and by holding Plaintiff's face in toilet water. (Second Am. Compl., ¶ 61.) Plaintiff alleges the defendants heard and ignored Plaintiff's "screams of pain." (*Id.*, ¶¶ 62–63.) Plaintiff asserts the defendants caused "cuts, bruises, permanent scars, and pain and numbness indicative of neurological injury." (*Id.*, ¶ 64.)

**1.    Fourth Amendment vs. Fourteenth Amendment Standard**

Plaintiff argues Defendants violated his Fourth Amendment rights by applying unnecessary and excessive force. (*See* Second Am. Compl. at 10; Resp., ¶¶ 34–36.) Defendants argue the court should apply the Fourteenth Amendment when analyzing Plaintiff's excessive force claim. (*See* Mot. at 30.) Excessive force claims are not governed by a single generic constitutional standard. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific

constitutional right allegedly infringed by the challenged application of force." *Graham*, 490

U.S. at 394.  Although it is beyond dispute that custodial detainees have a constitutional right not

to be subjected to excessive force, the source of that right is surprisingly unclear.  Both the

Fourth and the Eighth Amendments provide protection against excessive force in certain

contexts.  *Id.*  Excessive force claims arising in the context of an arrest are governed by the

Fourth Amendment, and are evaluated under an "objective reasonableness" standard.  *Id.* at 395.

Excessive force claims brought by convicted and sentenced inmates are governed by the Eighth

Amendment, and are evaluated under a "malicious or sadistic use of force" standard.  *Hudson*,

503 U.S. at 6; *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986).

The incident in this case arose after Plaintiff's arrest but before Plaintiff's initial

appearance/arraignment.  Thus, though it is clear that the Eighth Amendment standard does not

apply, whether the Fourth Amendment standard should apply, or whether the issue should be

analyzed under the Due Process Clause of the Fourteenth Amendment, is a matter of some

dispute.  The Supreme Court has expressly declined to decide the question of "whether the

Fourth Amendment continues to provide individuals with protection against the deliberate use of

excessive physical force beyond the point at which arrest ends and pretrial detention begins."

*Graham*, 490 U.S. at 395 n.10.

This lack of constitutional clarity has led to a circuit split.  Four circuits, including the

Tenth Circuit, have held that the Fourth Amendment provides the constitutional standard of

review for claims of intentional excessive force that arise after a warrantless arrest but before a

probable cause hearing or arraignment.  *See Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir.

2010); *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1042–43 (9th Cir.1996); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995); *Powell v. Gardner*, 891 F.2d 1039, 1043-44 (2d Cir. 1989); *see also Wilson v. Spain*, 209 F.3d at 714–16 (holding that the Fourth Amendment applies to an application of force that occurred in a holding cell after booking, but declining to set a bright line rule); *United States v. Johnstone*, 107 F.3d 200, 206–07 (3d Cir. 1997) (holding that the Fourth Amendment governs an assault by a police officer in the garage of the police station, an incident that occurred before pretrial detention, and noting that "a 'seizure' can be a process, a kind of continuum, and is not necessarily a discrete moment of initial restraint").  Four other circuits have held that the Fourth Amendment becomes inapplicable after the act of arrest, and instead analyze post-arrest claims of excessive force as substantive due process claims under the Fourteenth Amendment. *See Riley v. Dorton*, 115 F.3d 1159, 1162–63, 1166 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996); *Brothers v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1994); *Wilkins v. May*, 872 F.2d 190, 192, 195 (7th Cir. 1989).

The circuits embracing the Fourteenth Amendment as the operable standard have reasoned that neither the text nor the "core concerns" of the Fourth Amendment apply to custodial treatment.  *E.g., Riley*, 115 F.3d at 1163; *Wilkins*, 872 F.2d at 192 ("[a] natural although not inevitable interpretation of the word 'seizure' would limit it to the initial act of seizing"). Those courts see the Fourth Amendment and the body of case law it has generated as directed at the "initial act of restraining an individual's liberty" rather than conditions occurring

after a seizure or arrest is made. *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993); *see also Riley*, 115 F.3d at 1162 ("Decades of Fourth Amendment precedent have focused on the initial deprivation of liberty."). Some courts have expressed concern that because there is no obvious principled basis for limiting the reach of the Fourth Amendment, the Due Process Clause should apply after the point of seizure. *See Wilkins*, 872 F.2d at 194. Some have also interpreted *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Graham*, 490 U.S. at 395 n.10, as instructing courts to use a due process analysis in this context. Noting the *Graham* Court's statement that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment," those courts would apply a due process analysis to any excessive force claims that arise after the moment of arrest. *E.g., Riley*, 115 F.3d at 1162; *Valencia*, 981 F.2d at 1445.[2]

---

[2]In *Wolfish*, the Court noted that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law" and "a person committed to pretrial detention has not been adjudged guilty of any crime." *Wolfish*, 441 U.S. at 535–36. After reserving the question of whether the Fourth Amendment continues to protect individuals against excessive force after arrest, the *Graham* Court reaffirmed that dicta, writing, "It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham*, 490 U.S. at 395 n.10 (citing Wolfish, 441 U.S. at 535–39). Taken together, the Court's statements seem to distinguish between excessive force that amounts to punishment and excessive force generally. While it is no easy task to disentangle the two, it is at least clear that the Fourteenth Amendment applies to the former. Puzzling through the distinction, the Ninth Circuit has treated the substantive due process protections against force intended to punish as a kind of constitutional minimum, while still holding that the Fourth Amendment protects arrestees subject to excessive force prior to a probable cause hearing. *Compare Pierce*, 76 F.3d at 1042–43 (holding that the Fourth Amendment governs excessive force claims that occur post-arrest and pre-arraignment), with *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1485 (9th Cir. 1993) (holding that an arrestee who was held for six days without a probable cause hearing or arraignment was "at least entitled to the protections afforded pretrial detainees" under the Fourteenth Amendment, without

Courts that apply the Fourth Amendment to excessive force claims in this context have articulated three principal reasons for doing so.  First, they have noted that *Wolfish* does not govern excessive force claims that occur before probable cause hearings, as the Supreme Court defined a "pretrial detainee" as someone who has had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest."  *Wolfish*, 441 U.S. at 536 (*quoting Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)); *Aldini*, 609 F.3d at 865.  This definition suggests that someone who has not had a probable cause hearing is not a "pretrial detainee" whose claims are analyzed under a due process standard.  *Aldini*, 609 F.3d at 866.  Second, they have observed that neither the Constitution's text nor Supreme Court precedent provides a principled basis for demarcating the end of Fourth Amendment protection and the beginning of Fourteenth Amendment protection.  *Id.*  To fill the constitutional gap, the courts have looked to judicial process that changes the legal status of an arrestee to draw a dividing line. *Id.*  Because an arraignment or a probable cause hearing constitutionally authorizes detention based on a judicial finding of probable cause, and changes someone's status from an "arrestee" to a "pretrial detainee," courts have viewed treatment of arrestees before these processes as falling under a different doctrinal regime than treatment of detainees.  *See id.*  Third, several courts have placed weight on precedents that assess the constitutionality of the duration of and legal justification for warrantless, post-arrest, pre-arraignment detentions under the Fourth Amendment.  *See, e. g., Pierce*, 76 F.3d at 1043 (citing *County of Riverside v.*

--------

considering whether the Fourth Amendment governed the claim).

*McLaughlin*, 500 U.S. 44, 56 (1991) (holding that the Fourth Amendment usually requires a probable cause hearing within 48 hours of a warrantless arrest); *Gerstein*, 420 U.S. at 114 (holding that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest")); *Austin*, 945 F.2d at 1160.  They reason that, by extension, the Fourth Amendment should also govern the treatment or condition of arrestees in the same context.  *Pierce*, 76 F.3d at 1043; *Austin*, 945 F.2d at 1160.

Determining the applicable constitutional provision is not a merely technical exercise, as the burden that the plaintiff must meet is substantially different under the Fourth and Fourteenth Amendments.  *See Porro v. Barnes*, 624 F.3d 1322, 1324 (10th Cir. 2010) ("Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment–all depending on where the defendant finds himself in the criminal justice system-and each carries with it a very different legal test."); *Aldini*, 609 F.3d at 864.  An excessive force analysis under the Fourth Amendment looks to the objective reasonableness of the officer's actions, without inquiring into the subjective motivations of the officer.  *Graham*, 490 U.S. at 397–98.  By contrast, when conducting a substantive due process analysis, courts ask whether an officer's conduct "is so beyond the norm of proper police procedure as to shock the conscience."  *Wilkins*, 872 F.2d at 195; *see also Riley*, 115 F.3d at 1168 n.4.

Plaintiff's case is distinguishable from *Austin*, the relevant Tenth Circuit case, and from the other courts that have applied the Fourth Amendment to excessive force claims.  In *Austin*, the Court stated that the Fourth Amendment not only bars the use of excessive force during the making of an arrest, but such also bars the use of excessive force during a period of detention

14

immediately following arrest and before a person arrested without a warrant is taken before a judicial official to determine whether the arrest and continued detention were based on probable cause, or before formal charges are brought. *Austin*, 945 F.2d at 1160.  In *Austin*, the plaintiffs were stopped at a port of entry into the United States from Mexico by officers, who, after finding a small amount of marijuana in their vehicle, allegedly took them to the port of entry office, handcuffed them and repeatedly assaulted them. *See Austin*, 945 F.2d at 1157.  The defendant allegedly refused to allow the plaintiffs to use the restroom, made them stay all night in clothes they subsequently had soiled, and refused to give them water. *Id.*  The plaintiffs never were arrested, allowed to contact counsel, or even advised why they were being held. *Id.*  The defendants were released without charging either with any offense. *Id.*

In Plaintiff's case, prior to Plaintiff's return to the United States, judges issued four separate warrants for arrest in four separate cases in which Plaintiff had already been charged; thus probable cause determinations had already been made by judicial officers in each of the four cases in which Plaintiff had been charged.  Moreover, unlike the plaintiffs in *Austin*, there is no dispute that the plaintiff was arrested by the defendants when he turned himself in.  Finally, unlike in *Austin*, Plaintiff here does not dispute the duration or the legal justification of his arrest and subsequent detainment; on the contrary, Plaintiff voluntarily turned himself into the police officials at DIA upon his arrival, as he was aware, apparently through discussions with his probation officer, that he had violated his probation and that warrants for his arrest had been issued.

Defendants place great weight on the fact that plaintiff, at the time he was arrested and detained, had warrants out for his arrest.  Defendants argue that Plaintiff was not a "free citizen" when he was in custody, and, thus, was a pretrial detainee subject to the Fourteenth Amendment standards.  (*See* Reply at 12 [citing *Graham*, 490 U.S. at 394; *Whitley*, 475 U.S. at 320–21].)  However, the fact that there were outstanding warrants itself is not determinative of this issue.  If Plaintiff had not turned himself into the authorities and instead had to be pursued at DIA, even with the outstanding warrants, the period of time up to Plaintiff's "seizure" would be analyzed under the Fourth Amendment standard.

The court agrees with other districts that have found where a plaintiff alleges concerns about his custodial treatment, and not the initial act of restraining a plaintiff's liberty, the Fourth Amendment standard does not apply.  *See Riley*, 115 F.3d at 1163; *Wilkins*, 872 F.2d at 192.  Thus, based on the facts of this case, after Plaintiff was arrested as a result of his voluntary surrender on outstanding warrants, he was not a "free citizen," but a pretrial detainee, and his claims regarding Defendants' alleged conduct should be analyzed under the Fourteenth Amendment's Due Process Clause.  *See Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (pretrial detainees are protected from excessive force that amounts to punishment under the Due Process Clause of the Fourteenth Amendment).

### 2.   *Fourteenth Amendment Due Process Clause*

Under the Due Process Clause of the Fourteenth Amendment, which protects against arbitrary governmental action by state authorities, the court "focus[es] on three factors: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury

16

inflicted; and (3) the motives of the state actor." *Porro v. Barnes* 624 F.3d 1322, 1326 (internal

citations omitted).  "Force inspired by malice or by unwise, excessive zeal amounting to an

abuse of official power that shocks the conscience may be redressed under the Fourteenth

Amendment." *Porro*, 625 F. 3d at 1326 (internal citation omitted).

A § 1983 claim for a violation of Fourteenth Amendment substantive due process rights

is recognized in the narrowest of circumstances.  The conduct alleged "must do more than show

that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or

misusing government power . . . .  [It] must demonstrate a degree of outrageousness and a

magnitude of potential or actual harm that is truly conscience shocking." *Livsey v. Salt Lake

County*, 275 F.3d 952, 957–58 (10th Cir. 2001); *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.

1995).  "Conduct intended to injure in some way unjustifiable by any government interest is the

sort of official action most likely to rise to the conscience-shocking level." *Sacramento v.

Lewis*,523 U.S. 833, 849 (1998).  What conduct may shock the conscience depends on context

and circumstances.  "[W]hen unforeseen circumstances demand an officer's instant judgment,

even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock

that implicates 'the large concerns of the governors and the governed.' " *Lewis*, 523 U.S. at 853.

The inquiry is pointed "to the official's opportunity for deliberation," and "in assessing the

constitutionality of law enforcement actions, we now distinguish between emergency action and

actions taken after opportunity for reflection." *Radecki v. Barela*, 146 F.3d 1227, 1231 (10th

Cir. 1998).  Courts "are required to give great deference to the decisions that necessarily occur in

emergency situations." *Radecki*, 146 F.3d at 1231–32.

17

### a.        *Pushing Head into Toilet Water*

Plaintiff alleges he held the jail cell's toilet handle down with his free foot and deliberately flooded the toilet onto the jail cell floor.  (Second Am. Compl., ¶ 34.)  Plaintiff states the defendants then uncuffed him and pushed his face into the toilet water on the jail cell floor, making him "feel like he could not breathe."  (*Id.*, ¶ 35.)  Some of the defendants allegedly held Plaintiff's face in the water until Plaintiff apologized.  (*Id.*)  Plaintiff alleges the defendants told him he could "drink *that* water."  (*Id.*, ¶ 50.)

To state a claim of being subjected to excessive force in violation of his constitutional rights, a prisoner must be able to show that force was applied maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline.  *See Hudson*, 503 U.S. 1 (stating Eighth Amendment standard).  Although Plaintiff's excessive force claim arises under the Due Process Clause of the Fourteenth Amendment because he is a pretrial detainee, the same Eighth Amendment standard applies.  *Meade*, 841 F.2d at 1527.  Plaintiff's allegations indicate the defendants were making a good-faith effort to maintain or restore discipline when Plaintiff intentionally flooded the toilet.  Regardless, Plaintiff has failed to allege he was harmed by the defendants' allegedly holding his face in the toilet water.  Although a showing of significant injury is not required, the good faith use of *de minimis* physical force is generally insufficient to state an actionable constitutional claim.  *Hudson*, 503 U.S. at 10.  Not "every malevolent touch by a prison guard" gives rise to a federal cause of action.  *Id.*  However, Plaintiff fails even to allege a *de minimis* injury related to the defendants' allegedly holding his head in the water on the floor.  Thus, Plaintiff's excessive force claim in this regard should be

18

dismissed for failure to state a claim, and the court need not address the question of whether the defendants are entitled to qualified immunity on this claim.

### b.       Handcuffing

Plaintiff alleges that the defendants ignored his "screams of pain" when he was handcuffed and when he was handcuffed to a metal bed.  (*See* Second Am. Compl., ¶¶ 61–62.) Thus, the court finds that Plaintiff has alleged inaction by the defendants after a period of reflection.  *Radecki*, 146 F.3d at 1231.

Defendants argue that the Plaintiff has failed to allege an injury that is more than *de minimus*.  (*See* Mot. at 13.)  The Tenth Circuit explained in *Vondrak v. City of Las Cruces,* "[w]e have consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims . . . .  Nevertheless, when an excessive force claim relies upon unduly tight handcuffing, we have held that the plaintiff must show 'some actual injury.' " *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001))(internal citations omitted).  In *Cortez v. McCauley*, the Tenth Circuit explained that, "[i]n some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Cortez v. McCauley* 478 F.3d 1108, 1129 (10th Cir. 2007).  The Tenth Circuit has decided fleeting discomfort or redness and pain caused by unduly tight handcuffing is, as a matter of law, a *de minimis* injury.  *See Cortez*, 478 F.3d at 1128 (concluding the injury was insufficient to support an excessive force claim when the only

evidence in the record was the plaintiff's affidavit asserting that the handcuffs left red marks that were visible for days).  Here, however, Plaintiff alleges "permanent scars, and pain and numbness indicative of neurological injury."  (Second Am. Compl., ¶ 64.)  There is no indication in Plaintiff's Complaint that the pain and numbness lasted only days or that it has dissipated. Thus, taking Plaintiff's allegations as true, as it must at this stage, *see Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F .3d 1188, 1192–93 (10th Cir. 2009), the court finds Plaintiff has alleged a more than *de minimis* injury, and thus has alleged a violation of his Fourteenth Amendment rights by the defendants.

### 3.        *Clearly Established Rights*

The next hurdle Plaintiff must clear to overcome the defendants' assertion of qualified immunity is to show that the rights he alleges were violated are clearly established.  *Herrera*, 589 F.3d at 1070.  To meet the burden to show that a right is clearly established, a plaintiff need not find a controlling decision declaring the "very act in question" to be unlawful, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); rather, it is necessary only that "[t]he contours of the right . . . be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *id.* at 635.  *See Weigel v. Broad*, 544 F.3d at 1154 (stating that the Tenth Circuit "do[es] not think it requires a court decision with identical facts to establish clearly" the right at issue in the case).

There are no Supreme Court or Tenth Circuit cases on point that show the defendants' alleged conduct violated Plaintiff's clearly established rights to be free of excessive force under the Fourteenth Amendment.  However, in the context of a Fourth Amendment violation, "[t]he

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The question of whether a right is clearly established must be answered "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 584 F.3d at 964. In a very recent Tenth Circuit case, the Court held that where the plaintiff posed no threat to the defendant or others, nor did the plaintiff resist or flee, the defendant was not entitled to qualified immunity on the plaintiff's claim for excessive force. *Morris v. Noe*, No. 11-5066, — F.3d —, 2012 WL 604170, at *8 (10th Cir. Feb. 27, 2012) (citing *Thorton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) (holding where arrestees had not committed a serious crime, posed no immediate threat, and did not actively resist arrest, "the officers were not justified in using *any* force, and a reasonable officer would have recognized that the force used was excessive)).

The Fourteenth Amendment standard is more onerous than the Fourth Amendment standard. Here, the court has already determined that, based on the facts alleged and at this stage in the proceedings, Plaintiff's excessive force claim related to the handcuffing incident survives. Moreover, Plaintiff turned himself in at DIA, and there is no reason for the court to believe he resisted arrest. Finally, the court is not inclined to grant qualified immunity on that claim where there is insufficient evidence and facts regarding whether the plaintiff posed a threat beyond causing the toilet in his cell to overflow. Based on the facts alleged in the Second Amended Complaint, there appears to be no justification for the use of *any* force. Thus, Defendants are not

entitled to qualified immunity on Plaintiff's claim for excessive force related to the tight handcuffs.

3.      **Second Claim for Relief for Due Process Violation**

In his Second Claim for Relief, Plaintiff alleges the defendants violated his procedural and substantive due process rights when they failed to return personal property taken from him when he was arrested.  (*See* Second Am. Compl., ¶¶ 53–59.)

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that no due process violation occurs when a state employee negligently deprives an individual of property, so long as the state provides an adequate post-deprivation remedy.  *Parratt*, 451 U.S. at 541–44, *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  The Court noted that where a loss of property is caused by the random, unauthorized act of a state employee, the state cannot predict when the loss will occur.  *Id.* at 541.  In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Court reaffirmed and extended the reasoning of *Parratt* to an unauthorized and intentional deprivation of property by a state employee.  *Hudson*, 468 U.S. at 533.

A.      **Adequate Post-Deprivation Remedy**

Plaintiff's Second Amended Complaint alleges he "called the Defendant officers, the DIA airport, and otherwise exhaustively attempted to reclaim his property," without success. (Second Am. Compl. at 9.)  However, Plaintiff fails to allege that post-deprivation remedies available to him, such as through Colorado statutory and common law, are inadequate.  The failure to assert this necessary element of the claim is fatal.  *See Sanchez v. Curtis*, No. 09-cv-02410-MSK-KMT, 2010 WL 3239260, at *1 (D. Colo. Aug. 13, 2010) (dismissing Due Process

claim where the plaintiff failed to allege that post-deprivation remedies are inadequate and Colorado statute allowing tort claims against state actors for willful and wanton conduct was available).

### B.     Random and Unauthorized vs. Planned and Authorized Acts

Plaintiff cites several cases in support of his contention that Defendants' alleged acts in depriving him of his property were not random or unauthorized.  (*See* Resp., ¶ 23.)  However, in two of the cases cited by Plaintiff, state officials deprived a person of his property through planned and authorized acts or established state procedure.  *See Lavicky v. Burnett*, 758 F.2d 468, 473 (10th Cir. 1985); *Wolfenbarger v. Williams*, 774 F.2d 358, 364 (10th Cir. 1985).  In *Lavicky*, for instance, the defendant sheriffs seized the plaintiff's vehicle for evidence at his larceny trial. 758 F.2d at 471–72.  After the plaintiff was convicted, his attorney requested the vehicle's return. *Id.* at 472.  The prosecutor denied the attorney's request and directed the sheriffs to authorize the victim to retrieve the vehicle parts the plaintiff had stolen. *Id.* According to the prosecutor, this course of action was appropriate even though it violated an Oklahoma statute that required a hearing for the disposition of stolen property. *Id.*  In rejecting the defendants' argument that *Parratt* and *Hudson* barred the plaintiff's cause of action, the court noted that the alleged wrongful conduct was planned and authorized by the district attorney acting in his official capacity. *Id.  See also Wolfenbarger*, 774 F.2d 358 at 365 (holding that the plaintiff could proceed with her Due Process claim because the law enforcement officers' acts

that deprived her of her property were directed and controlled by the district attorney, and thus, not random or unauthorized).[3]

Here, Plaintiff has failed to allege that the defendants disposed of his property through established state procedures or through planned or authorized acts.  Rather, Plaintiff alleges only that the defendants seized his luggage when he was arrested and later failed to return some of it. (*See* Second Am. Compl., ¶¶ 53–59.)  To the extent Plaintiff alleges the "Defendant officers acted as representatives of the state, and were cloaked with the authority of law, when they seized Mr. Osei's luggage" (*id.*, ¶ 54), the allegations are conclusory without supporting factual averments, *see Southern Disposal, Inc.*, 161 F.3d at 1262, and therefore are not entitled to the assumption of truth, *Iqbal*, 129 S. Ct. at 1949–51.  Defendants' conduct in confiscating Plaintiff's luggage when Plaintiff turned himself in–apparently without forewarning or notice–to be arrested upon his return from Ghana is exactly the type of "random and unauthorized"–and not planned or authorized by a higher authority–conduct contemplated by *Parratt* and *Hudson* in holding that no due process violation occurs, so long as the state provides an adequate post-deprivation remedy.

Because Plaintiff fails to allege that post-deprivation remedies available to him, such as through Colorado statutory and common law, are inadequate, and because this court finds

---

[3]In the third case cited by Plaintiff, *Herndon v. City of Park City, Kan.*, No. 07-1064-MLB, 2007 WL 2746795, at * (D. Kan. Sept. 20, 2007), the court analyzed the plaintiffs' claim for failure to return their property only to determine whether it was barred by the applicable statute of limitations.

Defendants' alleged conduct in confiscating Plaintiff's luggage was random and unauthorized, Plaintiff has failed to state a Due Process claim.

**4.     *Fourth Claim for Relief for Failure to Intervene***

Plaintiff alleges the defendants failed to prevent each other from subjecting Plaintiff to excessive and unnecessary force during his confinement at DIA.  (*See* Second Am. Compl., ¶¶ 68–72.)  An officer who fails to intervene to prevent another officer from depriving a person of his or her civil rights may be liable under § 1983.  *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984). In *Hall v. Burke*, 12 F. App'x 856 (10th Cir. 2001), the Tenth Circuit made clear that an officer's duty to intervene applies to instances concerning excessive use of force and illegal arrest.

> An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.  Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Hall*, 12 F. App'x at 861 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, Plaintiff asserts the defendants were present and surrounding Plaintiff when one or more other defendants used excessive and unnecessary force.  (Second Am. Compl., ¶ 68.) Plaintiff alleges the defendants had time to intervene and were capable of preventing harm to Plaintiff, yet the defendants "stood idly by and failed . . . to prevent their fellow officers from harming [Plaintiff]."  (*Id.*, ¶¶ 70, 71.)  Defendants argue that this claim should be dismissed

because the plaintiff fails to allege sufficient facts supporting his claim that the defendants violated his constitutional rights in any respect.  (Mot. at 16.)  Defendants also argue that Plaintiff fails to state a claim because he failed to allege the defendants had reason to know their colleagues were violating his rights under the circumstances.  (*Id.*)

Both of Defendants' arguments fail.  First, this court has determined Plaintiff has alleged a Fourteenth Amendment violation related to the excessively tight handcuffs.  Second, this court declined to recommend qualified immunity on Plaintiff's excessive force claim related to the tight handcuffing.  Based on the facts alleged, a reasonable officer watching the events unfold would have recognized that the force used was excessive (as no force was authorized) and thus would have had reason to know their defendant colleagues were violating Plaintiff's rights under the circumstances.  Defendants' motion to dismiss the failure to intervene claim should be denied.

### 5. *Fifth Claim for Relief*–**Monell** *Claim*

In his Fifth Claim for Relief, Plaintiff seeks to hold the City of Denver liable for the defendant police officers' alleged constitutional violations.  (*See* Second Am. Compl., ¶¶75–82.) Defendants argue that Plaintiff's *Monell* claim should be dismissed because it contains insufficient facts to establish the City's custom or policy caused Plaintiff's alleged injuries. (Mot. at 17.)

In his Complaint, Plaintiff alleges "upon information and belief," the City has a policy or custom of allowing those kept in custody at DIA to be handcuffed in the degrading manner in which Plaintiff was handcuffed and of depriving detainees of drinking water.  (Second Am.

26

Compl., ¶ 76.)  Plaintiff also alleges the City has a policy or custom of tolerating, ratifying or failing to discipline officers who have engaged in the conduct alleged by Plaintiff.  (*Id.*, ¶ 77.)

The court finds that these allegations are conclusory and fail to identify a particular policy or custom that was a moving force behind the constitutional violations alleged in the Complaint.  *See Littrell v. Davis Cnty.*, No. 1:05cv30, 2007 WL 583336, at *5 (D.Utah Feb.22, 2007) (dismissing a plaintiff's § 1983 claim against county when complaint only made "conclusory" allegations regarding a county policy and "[did] not identify a policy or custom that would be a moving force behind the constitutional deprivation alleged in the [c]omplaint"). Without such an allegation, the Complaint fails to "inform [the City of Denver] of the actual grounds of the claim against [it]."  *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Further, the Complaint does not clearly allege that the officer defendants' actions were taken in accordance with a City of Denver policy or custom, which is necessary in order for Plaintiff's claim to survive.  *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (stating that plaintiff must show "a direct causal link between the policy or custom and the injury alleged" in order to establish municipal liability under § 1983; *Canady v. Unified Gov't of Wyandotte Cnty./Kansas City, Kansas*, No. 02-3422, 2003 WL 21399030, at *1 (10th Cir. June 18, 2003) (affirming district court's dismissal of § 1983 claim against municipality when complaint did not allege that "[police] officers were acting to any official policy or custom of the municipality").

Plaintiff also alleges the City "ratified" the defendants' misconduct by failing to discipline the officers involved in the alleged incident.  (Second Am. Compl., ¶ 78.)  To the

27

extent Plaintiff asserts a "ratification" argument, this argument also fails.  *See Brammer-Hoelter*, 602 F.3d at 1189 ("Municipal liability may also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions-and the basis for them-of subordinates to whom authority was delegated subject to these policymakers' review and approval.").  Plaintiff's Complaint fails to allege any facts regarding an "affirmative approval" of the defendant officers' actions, which is required in order to impose municipal liability under a "ratification" theory.  *See Patrick v. City of Overland Park, Kan.*, 937 F. Supp. 1491, 1499 (D. Kan. 1996) ("In order to impose liability under § 1983 on a theory of ratification, plaintiff must allege more than mere acquiescence by a final policymaker in a subordinate's actions . . . [and instead] must allege . . . that the final policymaker affirmatively approved the particular action of the subordinate.") (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir.1993)).  Moreover, the Amended Petition does not allege that the "ratification [was] the moving force or cause of the alleged constitutional violation," which is also required.  *Brown v. Whitman*, 651 F. Supp. 2d 1216, 1232 (D. Colo. 2009) (internal citations omitted).  Therefore, Defendants' motion to dismiss Plaintiff's *Monell* claim should be granted.

WHEREFORE, for the foregoing reasons, this court respectfully

RECOMMENDS that "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Damages" (Doc. No. 30) be GRANTED in part and DENIED in part as follows:

1.      Plaintiff's First Claim for Relief for inhumane conditions should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6);

2.      Plaintiff's Second Claim for Relief Due Process violations should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6);

3.      Plaintiff's Third Claim for Relief for excessive force related to Defendants'

alleged pushing Plaintiff's head into the toilet water should be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6);

4.      Plaintiff's Third Claim for Relief for excessive force related to the handcuffs

should proceed, and the Defendants' motion to dismiss and motion for qualified

immunity related to this claim should be denied;

5.      Plaintiff's Fourth Claim for Relief for failure to intervene should proceed, and

Defendants' motion to dismiss this claim should be denied; and

6.      Plaintiff's Fifth Claim for Relief, the *Monell* claim, should be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6).

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 5th day of March, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge