IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-01135-PAB-KMT

GEORGE FRANCIS OSEI,

Plaintiff,

v.

JAMES BROOKS,
DAVID NGUYEN,
T. TOBIN, and
THE CITY AND COUNTY OF DENVER,

Defendants.

---

**ORDER**

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 59] filed on March 5, 2012. The magistrate judge recommends that the defendants' motion to dismiss [Docket No. 30] plaintiff's second amended complaint [Docket No. 28] be granted in part and denied in part. Objections to the Recommendation were due on March 22, 2012. Defendants have not filed any objections to the Recommendation. On March 19, 2012, plaintiff requested leave to file excess pages for his objections. *See* Docket No. 60.[1] The Court granted plaintiff leave to file objections not exceeding twenty pages. *See* Docket No. 61. Plaintiff filed twenty-one pages of objections on March 19, 2012. *See* Docket Nos.

---

[1]Practice Standards (Civil cases), Judge Philip A. Brimmer § III.A. (imposing a limit of fifteen pages on objections).

62, 63;[2] *see also* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.A. ("[P]age limitations include the cover page, jurisdictional statement, statement of facts, procedural history, argument, authority, closing, signature block, and all other matters, except the certificate of service.").[3] Nevertheless, the Court will consider plaintiff's objections and will "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

**I. BACKGROUND**

As the Recommendation recounts,

> Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, alleging Defendants violated his Fourth and Fourteenth constitutional rights. Plaintiff asserts that prior to April 5, 2009, he had been placed on probation in El Paso County, Colorado. Plaintiff was given special judicial permission to return to Ghana to sell business interests, and his trip took one and one-half months longer than expected. Because Plaintiff had violated a court order, his probation officer advised him to turn himself in upon returning to the United States. At the time Plaintiff returned to the United States [from] Ghana, he had four outstanding warrants for his arrest, including 1) a 2/23/09 warrant for failing to appear in an assault case; 2) a 2/23/09 warrant for failing to appear in a domestic violence case; 3) two 11/3/08 warrants for failing to appear in driving under suspension cases.
>
> On April 5, 2009, Plaintiff flew into Denver International Airport (DIA), where Defendants took custody of him, "put him into a temporary cell, and inhumanely abused him by denying him drinking water, torturing him with excessively tight handcuffs, handcuffing him to a metal bed in an unreasonable manner, and forcing his face into toilet water on the jail cell floor."

Docket No. 59 at 1-2 (citations and footnote omitted). Moreover, plaintiff contends that

---

[2]The Clerk's Office instructed plaintiff to re-file the objections using the correct Electronic Case Filing event, which plaintiff did on March 20, 2012. The Court will cite to Docket No. 63 in this order.

[3]The Court also notes that the signature blocks of plaintiff's complaint and other filings do not comply with Fed. R. Civ. P. 11(a).

the officers seized his luggage upon his arrest but did not later return all of his bags.

## II. DISCUSSION

### A. Deprivation of Basic Necessity

In his first claim for relief, plaintiff contends that, despite repeated requests, defendants deprived him of drinking water.[4] "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted).[5] Defendants were required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). To make out such a claim, plaintiff must show that defendants were deliberately indifferent to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The test for a "deliberate indifference"

---

[4]In a separate claim for relief, *see infra*, plaintiff alleges that defendants subjected him to excessive force when they forced his face into water that was on the floor of the cell.

[5]Although there is some question regarding whether plaintiff should be deemed a "pretrial detainee" or, rather, was an "arrestee" for purposes of the excessive force standard, *see infra* n.5, there is no dispute here that the standard applied to this claim is unaffected by whether plaintiff had yet to be arraigned. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 868-69 (10th Cir. 1997) ("[W]e conclude that in this circuit a prisoner, whether he be an inmate in a penal institution after conviction or a pre-trial detainee in a county jail, does not have a claim against his custodian for failure to provide adequate medical attention unless the custodian knows of the risk involved, and is 'deliberately indifferent' thereto. Whether the detainee has been taken before a magistrate judge or other judicial officer to determine the legality of his arrest is not material, the custodian's duty is the same in either event.").

claim has both "an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the harm suffered is sufficiently serious, *see Farmer*, 511 U.S. at 834, and the subjective component is met if a prison official knows of and disregards excessive risks to an inmate's health and safety. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "As to both components, [the] inquiry turns not only on the severity of the alleged deprivations, but also on their duration." *Bainum v. Sedgwick County Commissioners*, 27 F. App'x 965, 969 (10th Cir. 2001). For example, the Tenth Circuit has

> held that deprivations or conditions were sufficiently serious to state an Eighth Amendment claim in the following situations: denying a prisoner food or water for more than 24 hours during transport between prisons and restraining him with "a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water" provided to other prisoners; denying a prisoner all outdoor exercise for three years; exposing a prisoner "to other inmates' urine and feces via . . . standing water and also to close confinement with the odor of his own accumulated urine"; and requiring a prisoner to be in a feces-covered cell for three days.

*Lewis v. McKinley County Bd. of County Comm'rs*, 425 F. App'x 723, 727-28 (10th Cir. 2011) (citations omitted).

From the complaint, the Court cannot determine whether plaintiff was denied water for three hours or three days. *Cf. Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999) ("Plaintiff alleges cruel and unusual punishment in that defendants were deliberately indifferent to his health and safety by not allowing him to use the toilet, allowing him to sit in his own urine and in not providing fresh drinking water for two 8-hour periods . . . . [W]e have previously held that deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual

punishment.”); *Brown v. Gray*, 2011 WL 6091738, at *21 (D. Kan. Dec. 7, 2011) (“Brown alleges that he was deprived of water for only a couple of hours and then the water was turned on. Such a short period of time is insufficient to state a claim under the Eighth Amendment.”). Furthermore, the complaint lacks any allegation that plaintiff informed defendants, or defendants otherwise knew, that plaintiff was facing a medical emergency requiring immediate drinking water.[6] By only including allegations regarding the type of deprivation, but not its duration, the allegations are “so general that they encompass a wide swath of conduct, much of it innocent.” *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Consequently, plaintiff has “‘ha[s] not nudged [his] claim[] across the line from conceivable to plausible,’” *id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 570 (2007)), and plaintiff’s first claim for relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Deprivation of Property**

In his second claim for relief, plaintiff alleges that defendants’ failure to return some of his luggage constitutes a deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment. The Supreme Court has held that “the Due Process Clause is not violated when a state employee, by a random and unauthorized act, negligently deprives an individual of property, if the state makes available a meaningful postdeprivation remedy.” *Lavicky v. Burnett*, 758 F.2d 468, 472 (10th Cir. 1985) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by*

---

[6]Plaintiff does allege that he is “hypoglycemic and badly needed water.” Docket No. 28 at 4, ¶ 17. He does not allege what harm he suffered or risked suffering in light of that condition and the lack of water or whether defendants were aware of that risk.

*Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiff's complaint neither alleges the absence of a meaningful post-deprivation remedy[7] nor alleges that the conduct at issue was anything other than random and unauthorized. *See Wolfenbarger v. Williams*, 774 F.2d 358, 364 (10th Cir. 1985) ("Th[e] distinction between random, unauthorized conduct and conduct pursuant to established state procedure is significant."). The allegations are so general as to cover a negligent deprivation of property by defendants, which does not implicate the Fourteenth Amendment. *See Gray v. University of Colorado Hosp. Authority*, --- F.3d ----, 2012 WL 604164, at *15 (10th Cir. Feb. 27, 2012). The Court therefore will dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6).

**C. <u>Excessive Force</u>**

In his third claim for relief, plaintiff contends that he was subjected to excessive force when one or more defendants (1) handcuffed his hands and legs too tightly and (2) pushed his head into water on the cell floor from a toilet that plaintiff caused to overflow. The magistrate judge determined that the Fourteenth Amendment, rather than the Fourth Amendment, is implicated under the circumstances of this case. For the following reasons, the Court believes that it is best to resolve that issue when necessary since the difference in the two standards is immaterial to plaintiff's excessive

---

[7]Although plaintiff alleges that he has "exhaustively attempted to reclaim his property" and that defendants have not provided "a procedural mechanism to reclaim his property," Docket No. 28 at 9-10, ¶¶ 56-57, he does not allege "why he could not bring a state court action seeking damages for the loss of his property, under a theory of conversion." *Scott v. Crowley County Correctional Facility*, 76 F. App'x 878, 880 (10th Cir. 2003).

force claim at this stage.[8]

In regard to plaintiff's allegations regarding the use of handcuffs, the Recommendation concluded that plaintiff's allegations stated a claim for violation of the Fourteenth Amendment which overcame defendants' assertion of qualified immunity. Defendants have not filed any objection to that aspect of the Recommendation. The Court has satisfied itself that there is "no clear error on the face of the record," Fed. R. Civ. P. 72(b), Advisory Committee Notes,[9] in regard to the Recommendation's conclusion that the allegations regarding the use of handcuffs meets the Fourteenth

---

[8]The magistrate judge noted that the Tenth Circuit, joining certain other circuits, has "held that the Fourth Amendment provides the constitutional standard of review for claims of intentional excessive force that arise after a warrantless arrest but before a probable cause hearing or arraignment." Docket No. 59 at 10-11 (citing, *inter alia*, *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995). The magistrate judge distinguished this case from *Austin* on the basis that, in light of the outstanding warrants for plaintiff's arrest, a judicial determination of probable cause had already been made. *See* Docket No. 59 at 15. However, as the Recommendation points out, "courts have looked to [the] judicial process that changes the legal status of an arrestee to draw a dividing line," Docket No. 59 at 13; *see Austin*, 945 F.2d at 1160 (citing as persuasive authority the ruling in *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989), that the "Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested [pursuant to a warrant] is arraigned or formally charged, and remains in the custody (joint or sole) of the arresting officers"); *cf. McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988) ("Mr. McDowell is not complaining about the fact of the seizure, but about the manner in which it was carried out. . . . [I]f an otherwise reasonable seizure is accomplished through means that are unreasonable, in a constitutional sense, the seizure itself is 'unreasonable' and thus unconstitutional. And the seizure that occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers.").

[9]This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

Amendment standard.[10] Consequently, the Court will deny defendants' motion to the extent it seeks dismissal of plaintiff's excessive force claim arising out of the use of the handcuffs.[11] *Cf. Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) ("A substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of [the Fourth Amendment] . . . .").

The Court now turns to plaintiff's allegation that defendants shoved his face into water on the floor of the detention cell. Plaintiff alleges that, while handcuffed to the bed, he used his free foot to hold the toilet handle down, thus causing it to overflow onto the floor. *See* Docket No. 28 at 6, ¶ 34. Plaintiff hoped this would cause someone to help him. *See id.* In support of their motion to dismiss, defendants filed a video and audio recording of the time plaintiff spent in the detention cell. Plaintiff references the videotape in his complaint, apparently as a means of corroborating his version of the events, *see* Docket No. 28 at 2, ¶ 1; *id.* at 13, ¶ 77 (citing "video recordings" that "show supervisors that individual officers are committing misconduct of the type suffered by Mr. Osei"), but argues that the videotape should not be considered on this motion to dismiss. *Cf. Berry v. Safer*, 2004 WL 1961675, at *2 (S.D. Miss. July 9, 2004)

---

[10]In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

[11]For similar reasons, the Court also will deny defendants' request to dismiss plaintiff's fourth claim for relief, which alleges a failure to intervene on the part of certain defendants.

(considering a videotape and transcript on a motion to dismiss where they were "clearly referred to in the complaint, are central to the dispute, and their authenticity is not questioned").[12] Moreover, in responding to the motion, plaintiff relies heavily on his own description of what is depicted and heard on the videotape. *See* Docket No. 42 at 15-17. Nevertheless, the Court will not resolve the motion to dismiss by reference to the videotape. Because the dispute regarding this aspect of plaintiff's claim appears to turn so squarely on the contents of that videotape, the Court concludes that it is preferable to resolve the issue pursuant to Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

"[W]hen such a conversion occurs, the district court 'must provide the parties with notice so that all factual allegations may be met with countervailing evidence.'" *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) (quoting *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005)). In light of defendants' submission of the video, plaintiff's reliance on the videotape in response, and plaintiff's recognition that the Court might consider it to resolve defendants' motion, *see* Docket

---

[12] *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (providing that when resolving a motion to dismiss pursuant to Rule 12(b)(6) a court may consider, in addition to the allegations of the complaint, "(1) documents that the complaint incorporates by reference, (2) 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,' and (3) 'matters of which a court may take judicial notice.'") (citations omitted).

No. 42 at 25-27, appropriate notice has arguably been provided. *See Arnold v. Air Midwest, Inc.,* 100 F.3d 857, 859 n.2 (10th Cir. 1996) ("'[W]hen a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the part[y] puts [him] on notice that the judge may treat the motion as a Rule 56 motion.'") (quoting *Wheeler v. Hurdman,* 825 F.2d 257, 260 (10th Cir.1987)); *see also Lynch v. Bulman*, No. 06-1018, 2007 WL 2993612, at *2 n.2 (10th Cir. Oct. 15, 2007) ("[I]t is clear from Lynch's responses to the motions that he was aware the district court could convert them into motions for summary judgment. Moreover, he had the opportunity to introduce evidence not contained in the complaint; in fact, his responses to Defendants' motions referred to materials outside of the complaint.") (citations omitted). The Court, however, declines to resolve the issue pursuant to Rule 56 on the present state of the briefing. The Court's Practice Standards outline the manner in which factual issues should be framed at the summary judgment stage. *See generally* Practice Standards (Civil cases), Judge Philip A. Brimmer § III.F.3. The Court, therefore, will deny this aspect of defendants' motion and grant defendants leave to file a motion for summary judgment on this issue within thirty days of entry of this order.[13]

---

[13]The only additional evidence plaintiff indicates he might require for purposes of this aspect of his claim is evidence relating to what was said to him when his face was put into the water. *See* Docket No. 42 at 4. In responding to a motion for summary judgment, plaintiff is free to argue why such information is required in addition to what is depicted in the video and to propose the limited discovery he believes would be necessary in the event the Court were to agree. *Cf.* Fed. R. Civ. P. 56(d). Plaintiff, however, should be prepared to argue why, even if the Court were to assume as true his allegation regarding what was said, defendants are not entitled to summary judgment based on the contents of the tape. *Cf. Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, the reasonableness" determination becomes "a pure question of law") (emphasis in

**D. *Monell* Claim**

Plaintiff asserts his fifth claim for relief pursuant to *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978), against defendant City and County of Denver, for which the individual defendants worked. Plaintiff's complaint simply recites the legal elements of such a claim while providing virtually no factual allegations in support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court therefore finds that this claim is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 59] is ACCEPTED in part. It is further

**ORDERED** that defendants' motion to dismiss [Docket No. 30] is GRANTED in part and DENIED in part. Plaintiff's first, second, and fifth claims for relief are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). It is further

**ORDERED** that, within thirty days of entry of this order, defendants may file a motion for summary judgment to the extent described above, such motion not to exceed 7 pages.

---

original).

DATED March 30, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge